UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANDRE HARRIS,

    Petitioner,

v.

MATT MACAULEY,

    Respondent.

_____/

Civil No. 2:22-CV-11301
HONORABLE NANCY G. EDMUNDS

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

DeAndre Harris, ("Petitioner"), confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions for assault with intent to do great bodily harm less than murder, M.C.L.A. § 750.84, felon in possession of a firearm, M.C.L.A. § 750.224f, felony-firearm, M.C.L.A. § 750.227b, and being a fourth habitual offender, M.C.L.A. § 769.12. For the reasons that follow, the petition for a writ of habeas corpus is DENIED.

### I. Background

Petitioner was originally charged with assault with intent to commit murder, felon in possession of a firearm, and felony-firearm. Following a jury trial in the Wayne County Circuit Court, petitioner was convicted of the lesser included offense of assault with intent to do great bodily harm and guilty as charged of the firearms offenses.

The Court recites verbatim the relevant facts relied upon by the Michigan Court of

1

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> This case stems from the October 6, 2017 assault of Troy Tisdale outside of a liquor store in Detroit, Michigan. Tisdale was selling movies and music from a cart outside of the liquor store that night, as he usually did, and he had been there that night since approximately 6:00 or 7:00 p.m. At some point that night, defendant and his brother, Derrick Howard-Larkin, arrived at the liquor store in a gray or silver car. Defendant was wearing a "burgundy hoodie," and Howard-Larkin was wearing a "grey hoodie." Defendant was the ex-boyfriend of Taisha Brunsun, and Brunsun was also the mother of Tisdale's three children. Harris had recently discovered that Tisdale was living with Brunsun.
>
> Surveillance cameras outside of the liquor store captured events that took place once defendant and Howard-Larkin arrived, including the physical altercation involving defendant, Howard-Larkin, and Tisdale. This surveillance footage was admitted as an exhibit at trial and played for the jury. Tisdale testified that defendant directed insults and threatening statements at him and that the confrontation became physical after defendant threw a glass beer bottle at Tisdale and then came at him with another bottle in his hand. Tisdale fought back, and Howard-Larkin then attacked Tisdale once Tisdale "got [defendant] on the ground." Tisdale continued to fight against both defendant and Howard-Larkin. At some point, according to Tisdale, he picked up a knife from the ground. Tisdale did not know where the knife came from. Orlando Simpson, who witnessed the incident, testified that defendant had the knife first and that Tisdale took it away from defendant during the course of the fight. Tisdale testified that he used the knife to try to get defendant and Howard-Larkin to back away. Howard-Larkin walked away, and Tisdale threw the knife down.
>
> As the confrontation continued between Tisdale and defendant, Howard-Larkin returned. According to the surveillance video and Tisdale's testimony, Howard-Larkin walked up to Tisdale, aimed a handgun toward Tisdale's head, and fired. Tisdale ducked and avoided being shot. He grabbed Howard-Larkin, and a struggle over the gun ensued during which Howard-Larkin lost control of the gun. Tisdale testified that he heard two more gunshots at some point during this struggle with Howard-Larkin. Tisdale heard Howard-Larkin say, "Pick up the gun, pick up the clip, hurry up and shoot this motherf*ucker." The surveillance footage shows Howard-Larkin holding Tisdale down as defendant reappears on camera, pulls up his hood, and then holds a gun against Tisdale's upper back or shoulder. Then Howard-Larkin released Tisdale, and defendant and Howard-Larkin walked away. Tisdale walked away in the opposite direction. Tisdale also testified that defendant never fired the gun at him. Tisdale was eventually

2

transported to Sinai-Grace Hospital with a gunshot wound to his left shoulder, and lacerations to his lip and elbow.

At some point after being shot, Tisdale called Brunsun and told her that defendant shot him. Tisdale asked Brunsun to come to the hospital, but Brunsun was afraid to leave her house because she was worried defendant would "come and shoot [her]" next. After speaking with Tisdale, Brunsun called 911, told the operator that Tisdale had shot the father of her children (Tisdale), and asked for an escort to her vehicle so she could leave her house.

In the early morning hours of October 7, 2017, Detroit Police Officer Lamar Kelsey went to Brunsun's home to follow up with her about the shooting. According to Kelsey, Brunsun had received "threatening calls" from defendant. Kelsey testified that while he was present at the home, Brunson received a telephone call from defendant. Kelsey further testified, "She had put her cellphone on speaker and I overheard the person on the other end state he was going to kill her and she was going to be on the news." A recording of the call played during trial, and Kelsey acknowledged that the recording did not include the words "I'm going to kill you." However, Kelsey also stated that there was more to the conversation than what was contained in the recording, and that defendant called several times before the recording began. Brunsun testified that she remembered a telephone call where defendant mentioned the news, but she did not remember defendant making a threat.

*People v. Harris*, No. 345136, 2020 WL 1648009, at *1–2 (Mich. Ct. App. Apr. 2, 2020);

*lv. den.* 506 Mich. 942, 949 N.W.2d 704 (2020); *cert. den. Sub nom Harris v. Michigan,*

141 S. Ct. 2768 (2021).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The trial court's questioning of multiple witnesses that essentially advocated for and strengthened the prosecution's case, pierced the veil of judicial impartiality, demonstrated the trial court's partiality toward the prosecution, and improperly influenced the jury by creating an appearance of advocacy and partiality against Harris. In the alternative, defense counsel was ineffective for failing to object to the trial court's questioning of Mr. Tisdale and Ms. Brunson. The state court unreasonably erred when it failed to recognize the constitutional violation.

II. The trial court reversibly erred when it admitted highly prejudicial and irrelevant evidence regarding an alleged threat to Ms. Brunson by Harris following the shooting incident with Mr. Tisdale. The state court

3

unreasonably erred when it failed to recognize this clear constitutional violation.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

**A. Claim # 1. Judicial misconduct/ineffective assistance of counsel.**

Petitioner first claims he was denied a fair trial because of judicial misconduct.[1]

The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). The right to an impartial judge is a right whose deprivation a state prisoner may complain of in a federal habeas corpus proceeding. *Tyson v. Trigg*, 50 F.3d 436, 438 (7th Cir. 1995)(citing to *Turner v. Ohio*, 273 U.S. 510, 523 (1927); *In Re Murchison*, 349 U.S. 133 (1955)). Trial judges have a wide latitude in conducting trials, but they must preserve an attitude of impartiality and scrupulously avoid giving the jury the impression that the judge believes that the defendant is guilty. *Harrington v. State of Iowa*, 109 F.3d 1275, 1280 (8th Cir. 1997); *Brown v. Palmer,* 358 F. Supp. 2d 648, 657 (E.D. Mich. 2005).

However, when reviewing a judicial misconduct claim in a habeas corpus petition, a federal court must ask itself whether the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995); *Brown v. Palmer,* 358 F. Supp. 2d at 657. To sustain an allegation of bias by a state trial judge as a grounds for habeas relief, a habeas petitioner must factually demonstrate that during the trial the judge assumed an attitude which went further than an expression of his or her personal opinion and impressed the jury as being

---

[1] Respondent argues that the judicial misconduct claim is procedurally defaulted. Petitioner argues in the alternative in his first claim that counsel was ineffective for failing to object to the alleged judicial misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claim, it would be easier to consider the merits of the claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

more than an impartial observer. *Brinlee v. Crisp*, 608 F.2d 839, 852-53 (10th Cir. 1979); *Brown,* 358 F. Supp. 2d at 657. A trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a significant degree before habeas relief could be granted. *McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985); *Brown,* 358 F. Supp. 2d at 657. The Supreme Court has ruled that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish judicial bias or misconduct. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration-even a stern and short-tempered judge's ordinary efforts at courtroom administration-remain immune." *Id.*

Finally, the pertinent question on habeas review is not whether the judge's questions or comments might constitute reversible error if the conviction was being reviewed on direct review but whether the state appellate court's rejection of the judicial misconduct claim was a reasonable or unreasonable application of clearly established federal law. *See e.g. Allen v. Hawley*, 74 F. App'x 457, 460-61 (6th Cir. 2003).

Petitioner first refers to the judge questioning Mr. Tisdale about a previous incident in which petitioner threatened him with a knife. The judge asked Tisdale whether he got a good look at the knife and whether it was the same knife that he picked up off the ground at the time of the assault for which petitioner was convicted. *People v. Harris*, 2020 WL 1648009, at *3.

The second group of comments and questions that petitioner objects to involve the testimony of Larshone Brown, who worked at the liquor store that night. Many of his answers to the prosecutor's questions were, in the words of the Michigan Court of Appeals, "vague or noncommittal statements."

6

*People v. Harris*, 2020 WL 1648009, at *3.

The prosecutor asked Brown about whether he "want[ed] to be here," and Brown replied "No." *Id.* While the prosecutor was attempting to establish when Brown made a statement to the police, there was some confusion about the questions and the judge instructed both the prosecutor and defense counsel "to maintain your composure and your professional decorum and conduct yourself appropriately and, you know, there should be no tantrums." *Id.* When the prosecutor asked Brown about the fact that he didn't want to be in court to testify, defense counsel objected to the question as being leading, but the judge overruled him. *Harris,* 2020 WL 1648009, at *4. When defense counsel continued to object to the prosecutor's line of questioning, the judge replied:

> The Court: [Defense counsel], your objection is duly noted, but in this instance I believe it's appropriate under the circumstance because [the prosecutor] is attempting, I believe to establish that this—I mean, you can look at the witness's demeanor, he's turned away from him, leaned away from him and he's simply just trying to establish for the record that this is a hostile witness who is here testifying under protest. So that's why I'm overruling your objection.
>
> [Defense Counsel]: So just for the record, Your Honor, the witness's demeanor does not portray hostility-
>
> The Court: You hold on just one moment, [defense counsel], you have a seat. I make my—represent my rulings as to what I observe. Now, every other witness, if you want to do this we can, every other witness that has come on the stand and testified and any—even Stevie Wonder could see, will be facing forward and engage directly. This witness is turned to the side, leaned away with his head turned away, mumbling, giving answers that are virtually inaudible and it's very clear from his body language, as well as the manner of speech that he does not want to be here and does not want to answer questions. Now, I'm sure that won't change when you start asking him questions. The man doesn't want to be here and that's very clear, and I believe that [the prosecutor] is appropriately using leading questions to establish why he's conducting himself in this way. So, you know, this is a video courtroom and if at any point somebody wants to get ahold of the video and see exactly what the witness is doing, and that is consistent with

> my rulings in this regard, I'm sure they're free to do so. You may continue, [prosecutor].

*People v. Harris*, 2020 WL 1648009, at *4.

The judge later sustained one of defense counsel's objections to the prosecutor's questions about Brown not wanting to testify but overruled other similar objections. *Id.*

Petitioner further objects to the judge herself questioning Brown. The judge asked Mr. Brown about how he knew that petitioner was referring to killing Mr. Tisdale where petitioner only said that he "was going to kill him" without referencing a specific person. Upon further questioning, the judge said to Mr. Brown: I don't know what that means. I wasn't there and I can't put words in your mouth, but it came out in what way, through words, gestures, what are you saying?" The judge also asked Mr. Brown if the attack took place in a good or bad neighborhood, to which Brown replied that the neighborhood was bad.  The judge specifically asked Mr. Brown: "And is it popular to be someone who talks to the police or cooperates with the police in that neighborhood?" She also asked Mr. Brown if he knew what the term "snitch" means, to which Brown admitted that was a negative term for someone who talks to the police.  Brown admitted, in response to the judge's question, that it was not considered a good thing to be thought of as a snitch. *Harris,* 2020 WL 1648009, at *5. The judge further asked:

> The Court: Okay. And I'm asking another question, so your objection's duly noted and preserved. Have you ever heard the term snitch?
>
> [*Brown*]: I heard of it.
>
> The Court: What's a snitch?
>
> [*Brown*]: That's where you're talking to the police.

8

> The Court: Oh, so you do know a word for what people are called that talk to the police.
>
> [Brown]: If that's what you call it.
>
> The Court: Okay. Now, is that a good thing to be known in that neighborhood over there as a snitch or a person who talks to the police?
>
> [*Brown*]: Not good for no one.
>
> *The Court*: All right. And is that affecting you wanting to be here to talk in this case?
>
> [Brown]: Yes.
>
> The Court: Okay. But despite that, are you doing your best to tell the truth about what you remembered and what you saw?
>
> [Brown]: Yes.
>
> The Court: Do you remember, word-for-word, everything that was said between you and the person with the burgundy sweatshirt?
>
> [Brown]: No.

*People v. Harris*, 2020 WL 1648009, at *5.

Petitioner next contends that the judge pierced the veil of impartiality in her questioning of Ms. Brunsun. The judge questioned Brunsun at length about the fact that she was in relationships with both petitioner and Mr. Tisdale at the same time. The judge questioned Ms. Brunsun about the time frame of how long after she "put out" petitioner, Mr. Tisdale moved in. The judge asked Ms. Brunsun about how she continued to maintain a romantic relationship with petitioner if she was now living with Mr. Tisdale. In response to the judge's questions, Ms. Brunsun acknowledged that petitioner and Mr. Tisdale both became aware that she was still romantically involved with petitioner while Mr. Tisdale was living with her. In response to the judge's question, Ms. Brunsun admitted that

9

petitioner was not happy when he mentioned to her that he was aware that Mr. Tisdale was living with her. *People v. Harris*, 2020 WL 1648009, at *6.

Lastly, petitioner argues that the judge committed misconduct during defense counsel's cross-examination of Orlando Simpson about the surveillance video.[2] When defense counsel asked Simpson if the video showed "the guy in the black raise up the knife towards my client", the judge interrupted counsel and stated:

> Wait, wait. Ms. Barnwell. The video speaks for itself. It's not necessary to ask this witness to narrate the video. So the video speaks for itself and you're free to argue whatever you want about your interpretation about what you believe is going on in the video.

(ECF No. 9-17, PageID.1486).

When counsel again attempted to question Mr. Simpson about the video, the judge interjected:

> Ms. Barnwell, the video, again, speaks for itself and you can argue to the jury whatever you think it means and they're free to interpret it as they see fit. They're the finders of fact, and they'll determine what the video shows.

(*Id.*, PageID.1487).

A trial judge may interject himself or herself "into the trial, speak to counsel, and question witnesses in order to clear up confusion regarding the evidence or aid in its orderly presentation." *United States v. Powers*, 500 F.3d 500, 511 (6th Cir. 2007). In the present case, the trial court judge interjected herself only to clarify the witnesses' testimony. It is not unconstitutional under the Due Process Clause for a state trial judge

---

[2] Respondent argues that this judicial misconduct subclaim is unexhausted because petitioner did not raise this specific claim on his direct appeal. **Error! Main Document Only.**An unexhausted claim may be adjudicated by a federal court on habeas review if the unexhausted claim is without merit, such that addressing the claim would be efficient and would not offend the interest of federal-state comity. *Prather v. Rees,* 822 F.2d 1418, 1422 (6th Cir. 1987); *see also* 28 U.S.C. § 2254(b)(2). A federal court should dismiss a non-federal or frivolous claim on the merits to save the state courts the useless review of meritless constitutional claims. See *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991). Because this claim is without merit, the Court will address it even though it is unexhausted.

10

to seek clarification from witnesses at a criminal trial. *Brown v. Palmer,* 358 F. Supp. 2d at 657; *see also Wenglikowski v. Jones,* 306 F. Supp. 2d 688, 695 (E.D. Mich. 2004). "In fact, it is proper for a judge to question a witness when necessary either to elicit the truth or to clarify testimony." *Brown,* 358 F. Supp. 2d at 657.

Petitioner also alleges that the judge also ruled unfavorably against him or his counsel in several of the mentioned exchanges, this would be insufficient to prove a claim of judicial bias. The Supreme Court has indicated that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky,* 510 U.S. at 555. "In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required (as discussed below) when no extrajudicial source is involved." *Id.* Federal courts have numerous times denied habeas relief on a judicial bias claim based solely on allegations that the judge had ruled adversely against the petitioner. *See Mason v. Burton,* 720 F. App'x 241, 242–43 (6th Cir. 2017)*; Hardaway v. Burt,* No. 16-1666, 2017 WL 2831020, at *4 (6th Cir. Jan. 18, 2017)*; Cunningham v. Stegall*, 13 F. App'x 286, 290 (6th Cir. 2001).

Finally, although the trial judge expressed her impatience and frustration with defense counsel in a couple of the cited remarks, her remarks were in response to defense counsel's failure to accept the court's direction, thus, the judge's conduct was not so prejudicial as to deprive petitioner of a fair trial. *See Todd v. Stegal,* 40 F. App'x 25, 27 (6th Cir. 2002). In this case, "The reprimands were not out of line, nor were they substantially adverse to [petitioner] himself. There is no showing that the trial judge ever intimated [her] opinion on the merits of the case." *Id.* at 27. When viewing the record in

11

its entirety, the judge's conduct throughout the course of the trial did not display the type of "'deep-seated favoritism or antagonism' that would 'leave [a reviewing court] with an abiding impression that the trial judge permitted [herself] to become personally embroiled with [defense counsel]' so as to constitute a Due Process violation." *Gordon v. Lafler*, 710 F. App'x 654, 664 (6th Cir. 2017)(citing *Liteky,* 510 U.S. at 555).

Finally, any prejudice from the judge's questions and comments was also cured by the fact that the judge instructed the jury that her comments, rulings, and instructions were not evidence and further advised the jurors that if they believed that the judge had an opinion about how they should decide the case, that they should disregard that opinion and that they were the only judges of the facts. (ECF No. 9-11, PageID.1132). *See Todd v. Stegal,* 40 F. App'x at 28. The Court rejects petitioner's judicial misconduct claim.

Petitioner also claims that counsel was ineffective for failing to object to the judge's questions and comments.

To prevail on his ineffective assistance of counsel claims petitioner must show that the state court's conclusion regarding the claim was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

Petitioner's underlying judicial bias or misconduct claim is without merit; he is unable to show that trial counsel was ineffective for failing to object to the judge's

questions and remarks. *Gordon v. Lafler*, 710 F. App'x at 666. Petitioner is not entitled to relief on his first claim.

### B. Claim # 2. The irrelevant and prejudicial evidence claim.

Petitioner next alleges that his right to a fair trial was violated by the admission of irrelevant and prejudicial evidence in the form of a threat that he made to his girlfriend after the shooting.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000); *see also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).

Petitioner's claim that he was denied a fair trial by the admission of irrelevant and highly prejudicial evidence cannot form the basis for habeas relief, because it involves a state law evidentiary issue. *See Hall v. Vasbinder*, 551 F. Supp. 2d 652, 676 (E.D. Mich. 2008); *rev'd on other grds* 563 F.3d 222 (6th Cir. 2009); *see also Oliphant v. Koehler*, 451 F. Supp. 1305, 1308 (W.D. Mich. 1978).

Petitioner's claim that this evidence should have been excluded under M.R.E. 403 for being more prejudicial than probative does not entitle petitioner to habeas relief. The Sixth Circuit observed that "[t]he Supreme Court has never held (except perhaps within the capital sentencing context) that a state trial court's admission of *relevant* evidence,

13

no matter how prejudicial, amounted to a violation of due process." *Blackmon v. Booker*, 696 F.3d 536, 551 (6th Cir. 2012)(emphasis original). The Michigan Court of Appeals concluded that petitioner's threat was relevant to show that he was attempting to intimidate a potential witness and also to establish a motive for petitioner to attack Mr. Tisdale because of his ongoing relationship with Ms. Brunson. *People v. Harris*, 2020 WL 1648009, at *9–10. This Court must defer to that determination.

Petitioner's claim that the state court violated M.R.E. 404(b) or any other provision of the law by admitting other acts evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F.3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law). The admission of this "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief; there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "other acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003). Petitioner is not entitled to relief on his second claim.

## IV. Conclusion

The petition is denied with prejudice. The Court denies a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different

14

manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

The Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *See Allen v. Stovall*, 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001). The Court will also deny petitioner leave to appeal *in forma pauperis*, because the appeal would be frivolous. *Id.*

Based upon the foregoing, IT IS ORDERED that (1) the petition for a writ of habeas corpus is DENIED WITH PREJUDICE, (2) A certificate of appealability is DENIED, (3) Petitioner is DENIED leave to appeal *in forma pauperis*.

Dated: December 18, 2023

s/ Nancy G. Edmunds
NANCY G. EDMUNDS
U. S. DISTRICT JUDGE